2132 Puerto Rico Telephone Co., Inc. v. San Juan Cable LLC Mr. Pascarella, good morning. Good morning, Your Honor. Pat Pascarella for the Appellant PRTC. I'd like to reserve three minutes, if I might. You may. OneLink was not seeking to redress any grievances. OneLink was about delay. The market they had bought into had suddenly become competitive. Their private equity owners started looking for a buyer. They retained the law firm of one of their board members who proceeded to either file or supervise the filing of 24 petitions. They never won a single petition. They never once received the relief requested. Yet they were spectacularly successful. OneLink was successful in extending a ministerial application process that per the FCC and the Telecom Regulatory Board was to take 90 days for three and a half years. The district court incorrectly excused OneLink's sham petitioning under the NORA doctrine. I'd like to talk about at least four of the errors the court made in coming to that conclusion. The first error was simply ignoring evidence of how much a reasonable jury could conclude sham. The second error was misconstruing what a win was under the objective portion of the holistic pattern test, which is applicable in this case. The third error was failing to recognize the significance of even its own, what we think flawed ruling on the win-loss record. And the final error, the most grave error I think by far, was after specifically holding that the test in PRE did not apply. In fact, after holding that failure to meet PRE is not fatal to PRTC's claim, it proceeds to insert the PRE test into the holistic test. This is contrary to California Motor. It is contrary to every circuit court ever to consider the issue over the last two decades. It's contrary to its own ruling. I'm sorry. Help me with this issue because in reading opposing counsel's brief, the principle simple argument that I came across is that the district court below determined that none of the specific actions in the chain, that no one of the 24 was baseless. In the blue brief, the opening brief on appeal, didn't challenge that finding at all. If that's correct under our precedent, then we deem as waived any challenge to that finding. And so the precise issue before us would be, is a chain of 10, 24, or whatever, petitioning activities that are none of which are baseless, could that give rise to the type of action that you want to bring here? What is your response to that particular argument? My response is yes, it could. The objective baselessness test is not the NOR test. It is not the California Motor test. It is not the test that makes something a sham. The test there is whether or not the petitioner was seeking to use the process as opposed to the outcome of that process to cause delay. California Motor laid out the holistic test. Sometime later, in PRE, the Supreme Court encountered a unique situation. And as it counseled itself in Allied 2, you have to look at the context in which these things arise. And the situation that the Supreme Court encountered was a troubling situation, where a petitioner filed a single petition and lost. And someone counter-claimed it was a sham. And the court was concerned that in that case, a lower court could erroneously combine the fact that they'd lost the petition with what's almost a presumed intent to harm their opponent by the filing of the litigation, which is not what makes it a sham. The court might confuse the loss plus that presumed intent to harm and mistake that for evidence that the defendant in the antitrust case intended to use the process as opposed to the outcome. Now your arguments, and I may be paranoid of you, but it starts raising some First Amendment concerns for me. Because let's say I write an op-ed piece in a newspaper that's highly critical of someone, that's false, but that it has some basis and it's a public figure. I'm okay. I can't be sued successfully, even if I did that to harm the person. Your argument would seem to lead us in the direction of saying if I wrote 20 op-ed pieces and every one of them had some basis but they were wrong, I could be held liable for that speech activity as long as I had a bad intent on doing it. And that worries me, what that opens up just across a broad range of First Amendment... It doesn't open that up, Your Honor, and it's not about bad intent. The court issue... So if we put to one side then your opponent's bad intent, then we're left with them filing up to 24 actions, each of which had a basis, a reasonable basis for bringing the action, but each of which they lost. And that's what we're left with, that we don't look at intent? Well, we're talking about two different intents, Your Honor. There is the presumed intent that by filing the case you intended to harm your right. Right, and I wrote those op-ed pieces because I intended to harm that political figure. The intent that is the inquiry of the holistic test that every circuit court has applied is whether there is an intent to use the process itself to impose the harm, to cause the delay, to impose the cost on the right. You're just trading on the fact that the type of First Amendment activity here, though it's First Amendment activity, is a special type, which has the potential to gum up the works in a way that other kinds of First Amendment activity doesn't because it's got legal processes and the like that just have real effects. I mean, otherwise you can't distinguish the – if you treat all First Amendment activity the same, you're going to keep running into the problems Judge Kayette is raising. But you've got to make some argument that litigation activity and use of governmental processes, though First Amendment protected as petitioning activity, is different than core speech activity or something like that. Yes, Your Honor. And also, in this case, you're infringing on both parties' rights to seek redress. I mean, the claim is essentially that PRTC was denied access to the tribunals by this illegal anti-competitive conduct. And these are not issues that have been missed by the circuit courts by any means. They spoke specifically about these issues as they chose to interpret these tests. But if you look at the – to take the concurrence by Justice Stevens and Justice O'Connor, when they lay out what one would have to prove to make a case of a sham, even when there was some reason to believe, a reasonable person could believe that there might be success, notwithstanding the fact that there never was success, notwithstanding the fact that the evidence indicates that the reason was delayed, they don't say that's enough to make out the claim of sham. They say that you'd want to look at whether there's some unethical conduct in this shadow here. I mean, it's a much broader holistic picture precisely because, as they recognize, quoting Judge Posner, figuring out exactly when it's a sham and when it's not is a pretty delicate business, given the First Amendment interests at play. And so even if we credit the idea that maybe there is some possibility that you could show such a pattern, here, what do you have besides the fact that there were – they wanted harm. They filed many, many actions. Those actions lost, though they got relief of a stay and other things at times. And there's representations in the record that their motive was he wanted to make them play by the rules. He wanted a level playing field, which is different than a pure anti-competitive account. In other words, maybe there's some egregious case, but how egregious does it have to be? Well, the evidence that you cite, Your Honor, is self-serving statements by the members. But there's a lot of evidence that they weren't about seeking the relief. The most significant piece of evidence that they weren't seeking the relief was that after three and a half years of petitioning, when they finally got to the point where they would have the opportunity to demonstrate the interest that's required and seek relief, or if they couldn't demonstrate the interest, at least get to the courts, they walked away from the whole proceeding. And their excuse for that, and we're talking about a proceeding in which every claim that they had raised could be addressed. They walked away from it. Their excuse was there was no plausible avenue of relief that remained and the case was effectively over. This is when they refused to show up at the hearing and instead went to the appellate court and said the TRB has lost jurisdiction. The TRB had not lost jurisdiction. The Puerto Rico Court of Appeals told them that. The Puerto Rico Court of Appeals said go back and exhaust the process. Then you'll have a case. The federal court in the 1983 action told them the exact same thing. It's a little odd if your best evidence is that they dropped the pursuit of it. Well, Your Honor, if you have a time limit on the amount of delay you need, I only need to delay this until I can get this thing sold. Well, but the purchaser would have the exact same incentive to delay it. Every day delayed, they have monopoly control. So your whole motive theory... No, the motive of the intent that we're talking about is not to harm the other side. We assume that exists. The intent is to use the process as opposed to seeking the relief requested. By walking away when they had the opportunity to seek the relief, to level the playing field, to deal with this illegal conduct, to take care of all these things that they said were so unfair and a problem in the cross-subsidy issues. When they had that opportunity, because they had achieved all the delay they needed from the process, they walked. There's other evidence as well, Your Honor. The district court itself spent five pages analyzing the evidence that existed in the record on which a reasonable jury could determine that there was a sham in that case. He included the seven unsuccessful petitions. He included the shenanigans around the 1983 action. One link's timing of certain appeals. But there's other evidence as well, Your Honor. At the commencement of all this, one link told the TRB that its only vehicle to address these interests was intervention in the proceeding itself. Yet after making that representation, it found 22 other vehicles to file. An admission that it knew that these were sham proceedings. It funded a lawsuit by another company that it admitted would have no impact on it. What other... Certainly a reasonable jury could conclude, as it did in law, as the law court said it could, could conclude that that is sufficient evidence of sham. The win-loss record, by the way, Your Honor, is circumstantial evidence, at least according to the four circuits that have decided the issue, of sham. I'll stop there. Okay? Mr. Roth, good morning. Good morning. May it please the court, Yaakov Roth for Appleby One Link Communications. Your Honor, since this case comes to this court, we have unchallenged determinations by the district judge that each and every petition and lawsuit that One Link filed was objectively reasonable. There was a lot of fighting about that in the district court. We had briefing back and forth about the basis, the legal basis for each of the suits. PRTC argued they were legally frivolous. One Link explained why they had a strong legal basis. And the district judge, Judge Woodcock, resolved those in One Link's favor. PRTC made a decision not to challenge any of that on appeal. So the legal question that's now before this court is clear and it's narrow. Can a series of petitions be stripped of First Amendment protection and deemed a sham under the Norr-Pennington Doctrine, even if all of the underlying petitions are objectively reasonable? And the answer has to be no for two reasons. The objective reasonableness of the suits is dispositive, first, under the Supreme Court's decision in the PRE case, and second, even under the alternative holistic test that PRTC urges here. I'd like to start with PRE, because it is the binding Supreme Court precedent that addresses this issue. And I don't think it could be any clearer. PRE didn't say, here's a whole bunch of facts. We think there's no sham here. PRE said, we've had the sham exception. We've noted it in cases dating back several decades, but we've never defined it. Courts of appeals have been all over the map on what you need to show. We're going to give you a definition. Here's the definition. It has to be objectively baseless, and then you have to have the subjective intent to harm through the process rather than the outcome. That's not a pattern case, right? It involved one lawsuit, but nothing in the opinion suggests that there would be any difference. And in fact, Justice Stevens, in the concurrence in the judgment, not a concurrence, he refuses to join the majority and specifically says, I think this is an unnecessarily broad holding. He says, unnecessarily broad holding. He says, unnecessarily broad dicta. And he says on the next page, unnecessarily broad holding. He says both things. And we cite the right page of the opinion where he says that. And he specifically calls out the situation of multiple petitions and says, well, that's more complicated. Maybe we want to have a more flexible test there. The silence from the majority is deafening, and it's not like the majority didn't reserve any issues. It did. It reserved the issue of misrepresentation specifically, said we're not going to address that, but no indication that they care one way or the other, whether it's one suit or five, if they're objectively reasonable, they're protected by the First Amendment, they can't form the basis for a sham petitioning claim or an antitrust lawsuit. The court also specifically mentions California Motor, which is the prior decision that PRTC relies on, and says, since NORA, we've recognized that there's a core objective baselessness component. Nothing in California Motor retreated from that principle, and we've consistently adhered to it since California Motor. So it's very hard to then read the case and say, well, but California Motor says something different. No, PRT specifically said California Motor is completely consistent because California Motor involved a pattern of, quote, baseless repetitive claims. And, of course, in the background, we have the First Amendment principle, which it would be, I think, odd, to say the least, if you can engage in conduct once and it's constitutionally protected, but somehow when you engage in it more than once and we don't know how many times gets you across the line, suddenly you're open to it. Normally when I speak to someone, I have a First Amendment right to do it, but if I'm unlawful as fixing prices, that same speech becomes unlawful. In other words, the whole interest laws make some speech that's otherwise permissible potentially problematic, right? When it has a certain legal effect. And so use of a process, although in many instances permissible when done by a monopolist for anti-competitive purposes, might be no different than other kinds of speech acts that having certain effects might lead to that. And that's the sham doctrine, which we'll recognize. It said if you're engaging in, it's not real petitioning, because you're not really interested in winning, but you're trying to hold up the process. The question is just does the First Amendment track Rule 11 frivolousness doctrine or might the First Amendment not perfectly conform to what frivolousness is and instead look more deeply at what's really going on here. Is this truly an abuse of the process? Or is anyone interested? So Stephen cites a case where you have record evidence. At least we'll stop them from selling bombs or delaying the bond sale or whatever. I don't care what happens, just file a suit. Now, it happens the suit that was filed that some objective merit didn't actually violate Rule 11. A lawyer could not, with non-sanctionable purpose, file the suit. But in terms of what was the monopolist doing, those courts looked behind it and said, well, that is anti-competitive conduct. So I guess my question is, if I took Stephen's concurrence as a possible available rule, could you still win? Yes. And could you lay out how on the record you still could? Yes. So let me just say two things. First of all, I think that Justice Stephen's approach was offered to the court in Peoria and they said that they didn't take that approach. But some circuit courts have looked to it. We think improperly, but they've looked to it. And in fact, that's the test the district court applied here and said one link still wins. So what's the reason why? Why do we still win under the holistic standard? Well, I think you first still need to start with the objective merits reasonableness of the suits because that's going to be the best evidence. If you file some cases and some are frivolous, some are not, then maybe you can draw an inference, well, you didn't care whether they had merit. You weren't interested in winning. If all the suits are objectively reasonable, by definition they were winnable, then what's the ground for the jury to infer that you didn't want to win, at least in part, which is the test? Certainly they would have to point to something fairly probative that that was not the real intent here and they haven't done that. Judge Woodcock said after a very thorough review of the record, 150-page opinion, said on the last page, the record is devoid of any bad faith evidence of intent to harm through the process rather than through the outcome. So what does the PRTC point to? Well, the main thing they point to is win-loss record, which apart from being quite unworkable, I mean, we can't agree on the denominator, we can't agree on the numerator, Perry specifically said you can't look to that, that's post hoc. That doesn't tell you anything about the intent when you filed the suit. If you're interested in the intent when you filed the suit, you have to look to whether it was a winnable suit when you filed it. And on that basis, the district court ruled in our favor across the board. You know, the Ninth Circuit looked to win-loss record to come out the other way, to say it was not a sham, right? You can do that. You can say, well, this won, clearly it wasn't baseless. You can't do it in reverse, and Perry specifically warns courts against trying to do it in reverse. What else do they point to? This so-called abandonment at the end of the day. That's just a mischaracterization of the record. This is all laid out in the district judge's opinion. And in the record, what happened was, after the franchise was granted, which is when the Puerto Rico Supreme Court said that OneLink would have the ability to intervene, OneLink filed a petition to intervene, laying out why it had a substantial and legitimate interest to intervene, why the franchise agreement should be reconsidered and revoked. Filed everything. TRB said, okay, we've got it. We will rule within 90 days or we will lose jurisdiction. Ninety days pass, no ruling. OneLink appeals and says, okay, we're taking this to the Puerto Rico courts. You've lost jurisdiction. It's now probably a more favorable form, given that we had sued the TRB several times by this point. It wasn't exactly the best relationship. And takes the fight off, says TRB has no jurisdiction. Then the TRB says, oh, we'll give you a hearing on whether you can intervene. And we file the paper saying, respectfully, we think you've lost jurisdiction. We're not going to moot our appeal, which we think is stronger, by going forward with this hearing. You can't draw any inference from that that we didn't want to win. We were still pressing the argument. The question was, in which forum would we be pressing the argument? And we pressed it in the forum that we felt was the right one, and the district court found was objectively reasonable. Does your position have any room at all for any limitation on the bringing of non-frivolous but very weak loser cases seriatim against someone with the effect of greatly harming that person? For example, a very large economic entity or person starts filing a string of lawsuits against a middle class person who can't afford lawyers and files 25 suits. I think there's a few possible ways that non-frivolous lawsuits could potentially form the basis for a claim. One would be if it's in a mix with some are frivolous and some are not. So maybe they're not all objectively baseless under PRE, but some of them are and some of them happen to have merit. That's the scenario that some of the other circuits have dealt with and said, well, where it's a mixed bag, we're not going to grant you immunity across the board. If they're all reasonable, then I think the only way you could get around that would be to show either misrepresentation, some other type of fraud on the court, which is something that PRE expressly reserved as an option. But if all the cases are reasonable and there's no other indication of misrepresentation or anything like that, then that's the issue that PRE resolves. We're not going to look behind it because the deterrence and the chilling effect that that's going to cause of looking behind an objectively reasonable lawsuit is inconsistent with the first one. Would it be fair to say you're saying something like the objectively reasonable lawsuits can't provide that extra plus factor that might make it anti-competitive conduct just because they all lost? That is correct. And in this case, there's nothing beyond the fact that they all lost that would get you over that. That's your contention. And that's what the district court you say found effectively. Yes. I mean, we're weighing two arguments. First, we think there's nothing that could get you over it because PRE is clear that it's an independent requirement. But if you're going to relax PRE, as some courts have done, then you would at least need something else, whether it's that some of the suits are baseless, misrepresentation, something like that, to get you over the line. And the district judge didn't find anything here, and I don't think anything that PRTC has pointed to has any force. We've talked about win-loss. We've talked about the abandonment. You're effectively saying, I think, that it would be unconstitutional to adopt the English rule on attorney's fees in this country, where there's automatic fee shifting both ways, not just in favor of the plaintiff but also in favor of the defendant. Yeah, I've been thinking about that. I don't think so, Your Honor. I think there's a difference between the costs of the suit, the direct costs of the suit, and turning it into an antitrust violation, where you have, obviously, all the lost profits. But it would be for the plaintiff, because it could be part of the cost of the suit as part of the recovery of the injury of having the victim. But how about for the defendant? If you create an exception for that, how would it not lead to possibly an exception here that's a little bit broader than the way you're reading the Supreme Court opinion? I think, Your Honor, all I'm saying is that the fee-shifting rule would apply only to the cost of the lawsuit itself, which is much more narrowly circumscribed and does obviously have this historical background of, well, courts have done this. I think it's interesting to note, though, that the typical rule for fee-shifting against defendants is the Christiansburg test, which is you can't make the plaintiff pay your costs if the suit was objectively reasonable. So there is sort of this uniformity across different contexts in the law where the Supreme Court has said objectively reasonable claims, we're not going to punish those. True in PRE, they've done the same thing in the labor context. That's the E, E, and K decision about retaliatory labor lawsuits, and then Christiansburg for fee-shifting. So there is sort of, I think this is sort of a general principle, not in any way unique to antitrust. The last thing, Mr. Pasquarello was talking about the choice complaint and the dispute over whether OneLink had contributed part of the legal fees for that. The record is a little bit unclear. This court found that OneLink did not pay for any of that, but regardless, I think the much more important point is the whole point of NOR is that you can work together concerted action to seek anti-competitive action from the government. So there's nothing unusual about saying we're both incumbents, we're both threatened by this new entrant, let's get together and work together on this, and at most that would have been what happened. Again, no basis from that to draw any inference of sham intent, the way the Supreme Court has interpreted that. If there are no further questions, we ask the court to affirm judgment. Thank you. Mr. Pasquarello? I'll just take a moment, Your Honor. The case before the court today is a much more egregious case than any pattern case out there, all of which found sham. This is not new law. This is not a new case. This is not a new theory. What the police are asking the court to do is essentially to reject the pattern test, is to impose the objective baselessness test on any and all evidence that comes before the court regarding the filing of sham litigation. This is not the dictate of NOR. It is not the holding of CalMotor. PRE cites with approval CalMotor. Judge Stevens is concerned the courts may apply it in other more complex situations. The PRE objectively baseless test is not part of the holistic test that the four circuits have applied and that CalMotor created. The holistic pattern test has two simple parts. The first part is an objective criteria. What's the win-loss record? Did you win more than 500? If you don't pass that, you're not getting out of the box. But if you didn't, we're going to look at other evidence. Recognizing that even the win-loss record is evidence of sham. And the test doesn't risk chilling constitutional amendments. The First Amendment is not going to be out the window because we are correct in this case. I mean, the circuit courts all looked at that very closely, and they all said, Look, in a case of a pattern, you've got much more evidence for a court to look at. The risk of inadvertent chilling is very low. And they balanced that against the other side's rights and the antitrust laws, which is the consumers, and said that the risk of harm in a series is much higher. So we have... But here we're not actually talking about commercial speech. So this isn't just looking at an antitrust conspiracy. We're talking about actual petitioning of the government by a citizen, which I thought is not down in one of the lower tiers of what we're concerned about. But the finding of sham is the assessment of evidence to conclude that that's not what it was. That they weren't seeking redress. They were simply using the process to cause delight. But the thing that's just troubling is, I mean, you just think about defamation law, which is a similar type of problem, right? You shouldn't be able to defame people. But we're also worried about the First Amendment interest in being able to say bad things about people and not be liable for it. So you should be able to petition the government. Maybe you shouldn't be able to engage in anti-competitive conduct. We don't really just leave it to the jury, all things considered, which do you think it was. Because we have a pretty high standard before a jury is allowed to find that there was defamation. Some reckless disregard or something like that. And the evidence in this case is that although it was all objectively had some possibility of success, it turned out to be unsuccessful. And I guess the question is sort of what beyond that, for me, is what beyond that do you have that the district court identifies as being there? If I hear you, it's at the end of the day they walked away when they really were put up for shut-up time and then you confer back that everything they were doing wasn't for the reasons they said it was. Well, Your Honor, you can't expect a confession, all right? Well, why not? I mean, why not? Well, you've seen practically a confession. I mean, admitting that you funded a lawsuit that you had no interest in and there was no benefit to you, had no impact on you when it was withdrawn, is pretty close to a confession. Celebrating in a series of e-mails the fact that the Puerto Rico Supreme Court issued a stay to preserve the status quo is a pretty good indication of what this was about. Being threatened by the TRB with sanctions... I don't understand that one at all. If they file a petition that has a basis and they actually win it, is that supposed to be sad? That's not a win, Your Honor. They were celebrating the stay. They were celebrating the fact of the delay. A reasonable jury could certainly conclude that. If they were celebrating after they lost on the stay, I would think you'd have better evidence. Your Honor, there is much more evidence in this case of sham than there was in Wong. There is much more evidence of sham in this case than there was in Hanover. This is not a new area of the law. The holistic test has been around for two decades. It does not infringe on constitutional principles. And we ask that the court apply it in the First Circuit. Thank you.